**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HOWARD LEVY, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|    v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:11-CR-0085-AT-JFK-5 |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:13-CV-3120-AT-JFK |

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

The matter is before the Court on Movant's 28 U.S.C. § 2255 motion [206]; the

Magistrate Judge's Final Report and Recommendation (hereinafter "R&R"), which

recommends that the § 2255 motion and a certificate of appealability ("COA") be

denied [246]; and Movant's objections [254].[1]

In reviewing a Magistrate Judge's Report and Recommendation, the district

court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1). The District Judge must "give fresh consideration to those issues to

which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*

*of Ga.,* 896 F.2d 507, 512 (11th Cir. 1990) (citation and internal quotation marks

omitted). Absent objection, the district judge "may accept, reject, or modify, in whole

---

[1] Movant is counseled. Movant filed his § 2555 motion *pro se*, and the Magistrate Judge
appointed counsel. (Order of Jan. 28, 2014, ECF No. 224.)

or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## I. Background

In the underlying criminal proceedings, Movant was charged in Count One with attempt and conspiracy to commit bank fraud and with eleven additional counts of bank fraud and/or fraud with identification documents. (Superseding Indictment, ECF No. 45.)  On August 22, 2012, represented by Thomas C. Wooldridge, Movant entered into a plea agreement, in which he pleaded guilty to Count One. (Guilty Plea and Plea Agreement, ECF No. 153-1.)  The plea agreement contained a broad waiver of the right to review – Movant waived certain appeal rights and his right to collaterally attack his sentence or conviction. (*Id.* at 8-9.)  The government agreed to dismiss the remaining eleven counts. (*Id.* at 4.)  After a hearing, the Court accepted Movant's guilty plea. (Plea Hr'g Tr. at 33, ECF No. 211.)  In a judgment entered on February 8, 2013, the Court imposed a twenty-month below-guidelines term of imprisonment and a sentence of restitution in the amount $218,515.34. (J., ECF No. 187.)  The remaining counts against Movant were dismissed. (*See* Docket Entry 187.)  Movant did not appeal.

2

In September 2013, Movant filed his § 2255 motion, in which he has asserted that counsel provided ineffective assistance (1) by advising Movant that he was pleading guilty to bank fraud and not advising him regarding mail fraud and explaining the elements of conspiracy, (2) by failing adequately to advise Movant on the immigration consequences of pleading guilty, and (3) by failing to file an appeal — "I told my attorney that I was dissatisfied with the restitution and that I wanted to appeal it, but he advised me not to." (Mot. to Vacate at 5, ECF No. 206.) The government argued that Movant failed to show ineffective assistance on any of the grounds and, additionally, that his claim regarding counsel's failure to file an appeal was barred by his collateral-review waiver. (Gov't Resp. at 3-16, ECF No. 214.)[2]

The Magistrate Judge found (1) that Ground One fails because Movant was not charged with mail fraud and he understood the elements of bank fraud and conspiracy, (2) that Ground Two fails because counsel's immigration advice was constitutionally adequate and prejudice was lacking, and (3) that Ground Three fails based on Movant's broad review waiver or, alternatively, because Movant has not shown that counsel was ineffective for failing to file an appeal. (R&R at 4-18, ECF No. 246.) Movant objects to the Magistrate Judge's findings (1) that he failed to show that counsel's immigration advice violated his right to effective assistance of counsel,

---

[2] There is no controversy that Grounds One and Two — which essentially attack the validity of Movant's guilty plea — are properly raised in a collateral attack notwithstanding Movant's collateral-review waiver. (*See* Gov't Resp. at 3-4 n.2.)

(2) that he waived the right to raise a collateral claim that counsel was ineffective for failing to file an appeal, and (3) that Movant did not ask his counsel to file an appeal or reasonably demonstrate to counsel that he was interested in appealing. (Objections, ECF No. 254.)

## II.  Discussion

### A.  Whether Counsel's Immigration Advice Violated Movant's Right to Effective Assistance of Counsel

In his plea agreement, Movant agreed that there may be immigration consequences, including removal from the United States, to pleading guilty. (Guilty Plea and Plea Agreement at 9.)  Movant affirmed that he wanted "to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States." (*Id.*)  Movant also signed an acknowledgment that he had read the plea agreement and had carefully reviewed every part of it with his attorney and that he understood its terms and conditions and voluntarily agreed to them. (*Id.* at 11.)

At the plea hearing, after being sworn, Movant agreed that he had signed the plea agreement and that he had signed and understood the acknowledgment. (Plea Hr'g Tr. at 3-4.)  The Court inquired, "Are you a United States citizen?" (*Id.* at 17.)  Movant responded, "I'm legally here, but I'm not a citizen." (*Id.* at 18.)  The Court stated, "I'm not an immigration attorney, but I need to tell you that it is possible that

4

you could be deported as a result of the plea of guilty . . . – this is a strong consideration that you have to consider." (*Id.*) Counsel informed the Court that he had advised Movant to the "absolute extent of my knowledge. And I've told him there are possible immigration consequences and that – that he should talk to somebody that's a specialist . . . ." (*Id.* at 18.) The Court determined that it did not seem as though there had been "much of a discussion" on immigration consequences and gave Movant and counsel a five-minute break to discuss the matter and stated that, if they needed more time, to simply let the Court know. (*Id.* at 20.) When Movant and counsel returned to the plea hearing, Movant assured the Court that he had received an adequate opportunity to discuss immigration consequences with counsel and that he wished to proceed. (*Id.* at 21-22.) Later in the hearing, the government went over the terms of the plea agreement and summarized the removal paragraph – "there may be adverse consequences that affect his status as a legal resident alien and his ability to remain in the United States lawfully and that he could face deportation and removal based on . . . his plea of guilty." (*Id.* at 25.)

Before accepting Movant's guilty plea, the Court asked Movant whether anyone had made him any promises or representations other than those in the plea agreement, and Movant stated, "No, Your Honor." (*Id.* at 26.) The Court asked Movant whether he had been threatened, pressured, forced, or intimidated into pleading guilty, and Movant stated, "No, Your Honor." (*Id.*) The Court asked

5

whether there was anything that Movant did not understand or that he wanted to go over, and Movant responded, "No, Your Honor." (*Id.*) After the Court allowed Movant additional time to consult with counsel about another issue, the Court inquired whether he had any further issues, and Movant responded, "No, Your Honor." (*Id.* at 32.) The Court accepted Movant's guilty plea as knowing, intelligent, and voluntary. (*Id.* at 33.)

As recorded in Movant's pre-sentence investigation report (PSR), prepared by Vincent Boyd Collins, Movant communicated (at some time prior to sentencing) that he believed he might be a United States citizen, although Immigration and Customs Enforcement records showed that Movant was a permanent resident alien. (PSR, at Citizenship and at 31.) The lack of certainty regarding Movant's citizenship was confirmed by counsel at sentencing. (Sentencing Tr. at 40, ECF No. 228.) In his post-judgment motion for reclassification, Movant stated that he had derivative American citizenship and was wrongly housed with removable immigrants. (Mot., ECF No. 210.)

In his § 2255 motion, Movant asserts that counsel provided ineffective assistance by failing adequately to advise him on the immigration consequences of pleading guilty. (Mot. to Vacate at 5.) Movant asserts that counsel did not discuss immigration consequences until the plea hearing and that, when the court allowed him extra time to speak with counsel during the hearing, counsel told him that (1) he

6

had derivative citizenship, (2) the Court's admonishments during the plea hearing were normal procedures for anyone born outside the United States, and (3) immigration would not be an issue for Movant.[3]  (Mov't Reply at 5-7, ECF No. 218.)

During the § 2255 hearing, Movant and counsel testified regarding the extent of their pre-plea discussions and agreed that they had met five or six times.  (Section 2255 Hr'g Tr. at 5, 38, ECF No. 238.)  Movant testified that before he entered the plea agreement, he went over it with counsel and that counsel explained it "briefly."  (*Id.* at 21-22.)  Counsel testified that he went over the plea agreement with Movant, but could not remember whether it was on the day of the plea or before.  (*Id.* at 40.)  Counsel stated that he generally reviews a plea agreement with a client by allowing the client to read it and going through the plea, summarizing one section at a time.  (*Id.* at 41.)[4]

On Ground Two, the Magistrate Judge found that counsel's advice on the immigration consequences was constitutionally adequate and that prejudice was

---

[3] These allegations are directly contradicted by Movant's assurances to the Court under oath that he had not received any promises or representations other than those included in the plea agreement.

[4] The Court's CJA billing records indicate that, (1) prior to Movant pleading guilty, counsel conferred with the National Immigrant Justice Center and researched immigration issues; (2) that the day before Movant's guilty plea hearing, counsel conferred by phone with Movant for twelve minutes; (3) went over the plea agreement for over an hour with Movant on the day of the plea hearing; and (4) before sentencing, had additional conferences, including one with Movant, on immigration issues.

7

lacking because Movant had stated in the plea agreement that he wanted to plead guilty even if removal was automatic.  (R&R at 8-9.)

Movant objects that the plain language of the relevant immigration statute, 8 U.S.C. § 1101(a)(43)(M)(i), shows that fraud involving a loss to the victim of over $10,000 is an aggravated felony.[5]  Accordingly, he argues that the immigration consequences are clear, and counsel was deficient because his advice was not clear. Movant also objects to the Magistrate Judge's conclusion that a finding of prejudice is foreclosed by his statement that he wanted to plead guilty even if deportation was automatic.  Movant contends that he "did not actually know that deportation would be automatic."  (Objections at 3.)

Section 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  One of those rights is the Sixth Amendment right to counsel, which entitles a criminal defendant to "reasonably effective" legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To

---

[5]  "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  An aggravated felon, generally, is ineligible for "most" forms of relief.  *In re: Hugo Alberto Lantigua Michel*, No. A046 555 455, 2011 WL 1373696 (BIA Mar. 23, 2011) ("As an alien convicted of an aggravated felony, the respondent is ineligible for most forms of relief from removal . . . .").

AO 72A
(Rev.8/82)

show constitutionally ineffective assistance of counsel, a movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92.

To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). To properly advise a client on the immigration consequences of pleading guilty, "[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.[] But when the deportation consequence is truly clear . . . , the duty to give correct advice is equally clear." *Padilla v. Kentucky*, 559 U.S. 356 (2010) (footnote omitted).

In considering the validity of a guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Further, in collateral proceedings, it is the movant's burden to show that counsel was deficient,

9

that counsel's deficiency prejudiced him, and that he is entitled to § 2255 relief. *Mackey v. United States*, 221 F. App'x 907, 910 (11th Cir. 2007); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

Scheduling the primary review and discussion of a guilty plea agreement on the morning of the plea agreement predictably might leave a defendant with insufficient time to formulate his concerns, if any, about the plea agreement. The preferable professional practice would be to meet with the defendant at least a day before the plea hearing to discuss the essential elements of the plea agreement. However, counsel's brief consultation with Movant on the day before the plea and his lengthier consultation on the day of the plea hearing were constitutionally adequate. Counsel's consultation also was adequate in regard to immigration consequences, the specific issue raised by Movant. It is apparent that counsel informed Movant that there may be immigration consequences. The Court gave Movant additional time at his plea hearing to consult with counsel, and Movant informed the Court that he had received sufficient time and that he wished to proceed.

Although Movant's objections correctly state that a prospect of certain deportation requires equally certain advice from counsel, Movant fails to meet his burden of showing that, in his case, counsel had a duty to give *certain* immigration advice. The ability to provide certain legal advice on immigration consequences depends on the facts provided about a defendant's citizenship. Movant has stated to

10

different people, at different times, that he is not citizen, that he may be a citizen, and that he is a derivative citizen. *See Padilla*, 559 U.S. at 380 n.1 ("U.S. citizenship conferred by blood is derivative, and . . . depends on a number of confusing factors, including whether the citizen parent was the mother or father, the immigration laws in effect at the time of the parents' and/or defendant's birth, and the parents' marital status" (citation and internal quotation marks omitted)). The Court cannot find that the immigration consequences were clear or that counsel had an obligation to clearly advise Movant that he would be deported. Counsel spent time before and after the plea investigating immigration issues and informed Movant (1) that he had counseled him to the best of his ability, (2) that he *may* be subject to deportation, and (3) that he should talk to an immigration attorney. Such advice meets the standard in *Padilla*.

Additionally, Movant does not establish the prejudice prong of *Strickland*. Movant signed a plea agreement that stated he wanted to plead guilty regardless of any immigration consequences, even if it meant automatic removal from the United States. Movant signed an acknowledgment that he had read and understood the plea agreement. Under oath before the Court, Movant agreed that he understood the plea agreement and the acknowledgment. Movant received multiple opportunities during the plea hearing to inform the Court that he disagreed with the plea agreement on immigration consequences. Movant did not do so. Movant has not met his burden

of demonstrating to the Court that there is a reasonable probability that, had counsel given him different advice on immigration consequences, he would not have pleaded guilty to one count and would, instead, have insisted on going to trial on all twelve counts.

**B.     Whether Movant's Broad Review Waiver Bars Review of his Claim that Counsel was Ineffective for Failing to File an Appeal**

Movant objects to the Magistrate Judge's agreement with the government's argument that his broad review waiver waived the right to raise a collateral claim that counsel was ineffective for failing to file an appeal. The Court assumes without deciding that Movant's review waiver (which waived the right to collaterally challenge his conviction or sentence) does not foreclose his right to challenge counsel's failure to file an appeal. Notably, Movant's claim involves counsel's *post-conviction* and *post-sentencing* assistance. *Cf. Roberson v. United States*, 2011 WL 6032962, at *2 (S.D. Ga. 2011) ("The agreement forbids Roberson from collaterally attacking the sentence. Roberson is not attacking his sentence with his § 2255 motion; he is asserting his right to constitutionally sufficient assistance of counsel *post-sentencing*." (emphasis in original)). Accordingly, the Court addresses Movant's claim that counsel was ineffective for failing to file a direct appeal.

12

### C.     Whether Counsel was Ineffective for Failing to File an Appeal

The relevant background for this claim includes the following. In August 2012, Movant entered into a plea agreement in which he agreed that he would be subject to paying full restitution to all victims and that the intended loss amount was more than $200,000 and less than $400,000. (Guilty Plea and Plea Agreement at 3-6.) As stated earlier, Movant also agreed that he voluntarily and expressly waived the right to appeal or collaterally attack his conviction and sentence, with exceptions that do not apply here. (*Id.* at 8-9.) Movant further agreed that he had read and carefully reviewed the plea agreement with counsel, including the waiver. (*Id.* at 11.)

At the plea hearing, the government reviewed the possible penalties and stated that the Court would be required by statute to impose restitution for the actual losses to the financial institutions, and Movant stated, under oath, that he understood. (Plea Hr'g Tr. at 15). The government and the Court reviewed the appeal and collateral-review waiver, and Movant stated that he understood the waiver. (*Id.* at 24-26.).

 Movant's PSR listed an offense level of twenty-three, a guidelines custody range of forty-six to fifty-seven months, and restitution in the amount $218,515.34. (PSR at 38.) At his February 2013 sentencing, Movant told the Court that he had seen his PSR and had been able to discuss it with counsel. (Sentencing Tr. at 3.) The parties agreed that the government would drop certain enhancements and that the

13

guidelines range was twenty-seven to thirty-three months.  The Court adopted the PSR, as modified by that agreement, and proceeded to consider the appropriate sentence under 18 U.S.C. § 3553(a).  (*Id.* at 5.)

Counsel asked the Court to go below the guidelines and impose a sentence of probation on the grounds that trickery had been used against Movant when he first became involved in the fraud scheme and that Movant had allowed himself to continue in the scheme due, at least in part, to financial pressure.  (*Id.* at 13-14.)  The government argued that a twenty-seven month sentence, not a probated sentence, would be reasonable because (1) Movant's 2001 conviction (based on his stealing a social security number, using the identity theft information to buy a car, and writing bad checks for the down payment) showed that Movant previously had engaged in intentional fraud and (2) Movant had involved other people in the current fraud scheme.  (*Id.* at 22-25.)  The Court found that Movant's prior fraud conviction was relevant in determining whether Movant should have known what he was getting into in his current offenses, that Movant funneled checks because he wanted to get something out of it, and that he had involved others (prior to any alleged threat).  (*Id.* at 41-43.)  The Court imposed a twenty-month term of imprisonment as appropriate in Movant's case and imposed a $218,515.34 term of restitution.  (*Id.* at 45.)

The Court inquired, "Are there any objections to the sentence that anyone wants to make on the record?"  (*Id.* at 49.)  Counsel stated that there was no objection

from Movant. (*Id.*). After noting Movant's review waiver, the Court advised Movant (1) that if he wished to appeal he must do so within fourteen days, (2) that at his request the Clerk of Court would prepare and file a notice of appeal on his behalf, and (3) that if counsel was not able to file an appeal, the Court would appoint another attorney to do so. (*Id.* at 50.)

After sentencing, the Court granted Movant three extensions of time in which to voluntarily surrender – until July 8, 2013.[6] (See Order of June 21, 2013, ECF No. 203). On July 4, 2013, Movant sent the Court an e-mail and requested house arrest instead of confinement and stated, "Please reconsider, I feel my lawyer abandon[ed] me when I needed him to be there for me and my family." (Gov't Ex. 2.) The Court's Deputy Clerk informed Movant that he must submit his request in writing. (*Id.*)

In September 2013, Movant filed his *pro se* motion to vacate and asserted that counsel was ineffective for failing to file an appeal when he had told counsel that he was dissatisfied with restitution and wanted to appeal. (Mot. to Vacate at 5.)

The Court appointed counsel and a hearing was held before the Magistrate Judge to determine the communication between Movant and counsel regarding the filing of an appeal. The Magistrate Judge summarized the hearing as follows:

---

[6] The record shows that Movant, *pro se*, asked for an extension three times and does not show that Movant mentioned the matter of appeal in those communications. (*See Pro se* mot., ECF No. 198; *Pro se* mot., ECF No. 201; Order of June 21, 2013.)

15

At the hearing, Movant testified that he had expected probation and told counsel in the parking lot after sentencing that he was unhappy with and wanted to appeal his sentence, particularly restitution, and that counsel had stated that appeal was not a good idea because Movant had received a good sentence. ([Section 2255 hearing Tr.] at 8). Movant explained that he could not pay restitution and stated, "I didn't know I was going to pay restitution." (*Id.*). Movant testified (1) that after he received notice regarding his duty to surrender he contacted counsel (apparently via telephone or e-mail after several tries) to discuss an extension and counsel informed him that he no longer represented him and (2) that during the time before he surrendered he never met in person with counsel. (*Id.* at 9-10, 12). . . . Movant testified that in his *pro se* communication with the Court he did not mention the issue of appeal because "that was for my lawyer to do[.]" (*Id.* at 30).

Counsel testified that after sentencing he had a brief conversation with Movant along the lines that the sentence was a below guidelines sentence and that there were no issues for appeal. (*Id.* at 45). Counsel testified that Movant responded by saying okay and shrugging his shoulders. (*Id.* at 45-46). Counsel testified that after sentencing Movant never represented that he wanted to appeal any portion of his sentence, did not express dissatisfaction with restitution, did not ask him to appeal the restitution portion of the sentence, and did not ask him to file any appeal. (*Id.* at 45-47). Counsel testified that he had seen no non-frivolous grounds for appeal and that Movant never indicated anything that led him to believe that Movant wanted to appeal. (*Id.* at 48-49).

(R&R at 13-15 (footnotes omitted).)

Additionally, Movant's testimony at the § 2255 hearing indicates that counsel's communication that he no longer represented Movant occurred before Movant personally contacted the Court and obtained an extension of time to surrender (initially obtained in May 2013). (Section 2255 Tr. at 10.) Movant also testified in regard to the PSR as follows: (1) counsel did not show him the PSR before sentencing

16

or talk about the guidelines before sentencing and (2) he nonetheless told the Court before sentencing that he had seen the PSR because he was upset, counsel had told him to say yes, and did not know what else to do. (*Id.* at 6-7, 13-15, 20.) Movant also testified that at the time he pleaded guilty he did not understand the appeal waiver and that he must have answered that "yes" he understood because "everything I answered in there is yes." (*Id.* at 23, 28.)

In his post-hearing brief, Movant again argued that he told counsel that he wanted to appeal, particularly in regard to restitution. (Mov't Br. at 3, ECF No. 243.) Movant asserted that (1) his failure to receive the sentence of probation that counsel requested and (2) his *pro se* letter to the Court that showed dissatisfaction with his sentence both lend credibility to his assertion that he instructed counsel to file an appeal and/or had indicated an interest in appealing. (*Id.* at 4-6.)

The Magistrate Judge found Movant's assertion that he asked counsel to file an appeal was non-credible and that counsel's testimony to the contrary was consistent with Movant's lack of action and silence on the matter until September 2013, when Movant filed his motion to vacate. (R&R at 16-18.) The Magistrate Judge also credited counsel's testimony that Movant did not reasonably demonstrate that he was interested in appealing and found that Movant had not convinced the Court that a rational defendant would have wanted to appeal. (*Id.* at 17.)

17

Movant objects to the Magistrate Judge's credibility findings and determination that Movant did not ask his counsel to file an appeal or reasonably demonstrate to counsel that he was interested in appealing. (Objections at 5-7.)

The *Strickland* standard again applies. To show that counsel was ineffective for failing to file a notice of appeal, a defendant must demonstrate that counsel's failure was objectively unreasonable and prejudiced the defendant. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. When counsel disregards a client's specific instructions to file an appeal, prejudice is presumed. *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005). Absent specific instructions to file an appeal, counsel provides professionally unreasonable service if (1) "a rational defendant would want to appeal" or the "defendant reasonably demonstrated to counsel that he was interested in appealing" and (2) counsel did not consult with the defendant regarding an appeal. *Flores-Ortega*, 528 U.S. at 480, 484 (stating that the defendant must then show prejudice, which is not presumed). The district court generally defers to a Magistrate Judge's credibility determinations that are based on live testimony and demeanor. *United States v. Thelisma*, 559 F. App'x 898, 901 (11th Cir. 2014) (citing *United States v. Powell*, 628 F.3d 1254, 1256-57 (11th Cir. 2010); *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980)).

18

Allegations that counsel failed to file an appeal are troubling; this is especially so when the allegations are viewed in light of counsel's refusal to help his client with post-sentencing matters such as seeking an extension of time in which to surrender. However, in reviewing the record, the Court also is aware that Movant's presentation to this Court has been inconsistent on several matters. Movant agreed in his plea agreement that he would pay full restitution, and testified before this Court, under oath, that he understood that the Court was required by statute to impose restitution. That testimony is inconsistent with Movant's assertion before the Magistrate Judge, "I didn't know I was going to pay restitution." (Hr'g Tr. at 8.) Movant informed the Court before sentencing that he had seen his PSR and had been able to discuss it with counsel. That testimony is inconsistent with Movant's testimony before the Magistrate Judge that he had not seen the PSR before sentencing or discussed it with counsel. Movant informed the Court during the plea hearing that he had discussed the appeal waiver with counsel and understood it. That testimony also is inconsistent with Movant's testimony before the Magistrate Judge.

The above inconsistencies may indicate, in part, a legitimate struggle to understand. However, when Movant appeared before this Court, the Court fully explained to Movant his rights and gave him every opportunity to express and resolve any lack of understanding that he may have. Movant represented to this Court that he understood his rights. *See Blackledge*, 431 U.S. at 73-74. The Court finds that the

above inconsistencies are more than minor and indicate a lack of credibility on Movant's part, which casts a shadow over the credibility of Movant's current assertion that he instructed counsel to file an appeal. [7]

The record of inconsistencies is further weighted by the Magistrate Judge's finding that Movant lacked credibility, after having an opportunity to observe Movant and counsel during the § 2255 hearing.  Additionally, it appears that Movant knew by approximately May 2013 that counsel no longer represented him.  The Magistrate Judge pointed out that, if Movant had asked counsel to file an appeal and learned shortly thereafter that counsel was no longer representing him, it stands to reason that he would have taken some action to protect his appeal.  Movant did not do so. That failure also weighs against Movant's credibility on this matter.

The Court is troubled by counsel's decision to drop Movant after sentencing but otherwise finds nothing to suggest that counsel's testimony at the § 2255 hearing was non-credible.  On the whole, in weighing all of these matters, the Court must overrule Movant's objections.

---

[7] The court recognizes that Movant may simply have developed a more complete, concrete understanding of the implications of his sentence once he was incarcerated and re-cast in his mind the course of his communications with counsel.  However, this does not alter the evidence discussed herein which suggests Plaintiff had a change of mind about pursuing a appeal.

### III.    Conclusion

For the reasons stated above, Movant's objections fail and otherwise the Court finds no clear error in the Magistrate Judge's Final Report and Recommendation.

Accordingly, **IT IS ORDERED** that Plaintiff's objections [254] are **OVERRULED** and that the Magistrate Judge's Final Report and Recommendation [246] is **ADOPTED** as the Order of the Court, with the exception of the alternative recommendation of the collateral review waiver.

**IT IS ORDERED** that the § 2255 motion [206] is **DENIED** and that a certificate of appealability is **DENIED**.

**IT IS SO ORDERED** this 24th day of April , 2015.

_____
AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

21